UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

HAROLD MCENTIRE                      :
and MARY MCENTIRE,                   :
        Plaintiffs,                 :
                      :
        v.                            :    No. 5:24-cv-5992
                      :
WALMART SUPERCENTER #2252            :
and WALMART INC.,                    :
        Defendants.                 :

_____

**O P I N I O N**
**Motion for Summary Judgment, ECF No. 23 – Granted**

**Joseph F. Leeson, Jr.**                                    **August 25, 2025**
**United States District Judge**

## I.      INTRODUCTION

Plaintiffs Harold and Mary McEntire bring the above-captioned action against Walmart Supercenter #2252 and Walmart, Inc. (collectively "Walmart"), asserting claims of negligence and loss of consortium. On February 6, 2024, while shopping for a vacuum cleaner at his local Walmart Supercenter, Plaintiff Harold McEntire attempted to retrieve a boxed vacuum cleaner from atop a stacked product display. As he did so, another box was dislodged from the flat pallet on which it had been placed. The tumbling merchandise caused Mr. McEntire's legs to lock and forced his knees sharply toward the ground, resulting in injuries to his knees and back. The McEntires allege Walmart was negligent because the way in which the vacuum cleaners were displayed was a dangerous condition on its premises that posed a foreseeable risk to business invitees. Plaintiff Mary McEntire brings a derivative claim for loss of consortium, citing the substantial impact her husband's injuries have had on his physical functioning and their shared

quality of life. Walmart has responded by moving for summary judgment. For the reasons set forth below, summary judgment in favor of Walmart is granted.

## II.    BACKGROUND

### A.    Procedural History

On or about October 13, 2024, the McEntires commenced the above-captioned action in the Court of Common Pleas for Philadelphia County. *See* ECF No. 1. The Complaint asserted two counts: negligence and loss of consortium. *See id.* On November 8, 2024, Walmart timely removed the action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441. *See id.* Five days later, the parties jointly entered into a stipulation to amend the Complaint.[1] *See* ECF No. 6. On December 3, 2024, Walmart answered the Complaint and asserted eight (8) affirmative defenses, denying liability for the injuries alleged. *See* ECF No. 10.

Because this case was listed for compulsory arbitration, the Local Rules gave the parties "ninety (90) days from the date the answer was filed to complete discovery unless the judge to whom the case h.as been assigned orders a shorter or longer period for discovery." *See* E.D. Pa. Local Rule 53.2(4)(A). Therefore, the discovery deadline was set as March 3, 2025. On March 11, 2025, at the joint request of the parties, this Court extended the discovery deadline and dispositive motions deadline until April 11, 2025. *See* ECF Nos. 15-16. On April 3, 2025, this Court granted another joint extension request, extending the discovery and dispositive motions deadlines to June 10, 2025. *See* ECF Nos. 18-19. The April 3rd Order warned: "[n]o further extensions will be granted." *See* ECF No. 19.

---

[1]    The stipulation (1) struck the phrase "Recklessness" from paragraph 14 and (2) eliminated subparagraph 14(f) in its entirety, without prejudice, from Plaintiff's Complaint.

On June 10, 2025, Walmart filed a Motion for Summary Judgment, a Concise Statement of Material Facts in Support of the Motion for Summary Judgment on Behalf of Defendants, a Memorandum of Law, and supporting exhibits. *See* ECF No. 23.  Walmart also submitted a separate, unopposed request that the Court authorize a defense medical examination of Mr. McEntire on June 29, 2025, notwithstanding the expiration of the discovery deadline. *See* ECF No. 25. Through an Order dated June 11, 2025, this Court approved Walmart's unopposed request to conduct an independent medical exam of Mr. McEntire after the discovery deadline but advised that all other deadlines remain in full force and effect.  *See* ECF No. 26.

On June 30, 2025, after the McEntires failed to timely respond to the Motion for Summary Judgment, this Court issued an Order directing them to file their opposition to Walmart's Motion for Summary Judgment and to respond to Walmart's Statement of Material Facts no later than July 2, 2025. *See* ECF No. 27.  The Order warned the McEntires "that failure to timely respond will result in the facts being deemed admitted."  *See id.*  On July 2, 2025, the McEntires filed  a bare-bones opposition, which includes a request for additional time to complete discovery. *See* Opp., ECF No. 28. Walmart filed a reply brief in further support of its motion on July 3, 2025. *See* Reply, ECF No. 29.

### B.      Federal Rule of Civil Procedure 56(d)

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  "[T]he Federal Rules provide a clear and necessary step for counsel seeking

additional time for discovery: submission of an affidavit under Rule 56[d[2]] requesting such additional time." *Coleman v. City of Phila.*, 80 F. App'x 279, 282 (3d Cir. 2003). "Beyond the procedural requirement of filing an affidavit, Rule 56[d] also requires that a party indicate to the district court its need for discovery, what material facts it hopes to uncover and why it has not previously discovered the information." *Radich v. Goode*, 886 F.2d 1391, 1393-94 (3d Cir. 1989).

In opposition to Walmart's Motion for Summary Judgment, the McEntires contend that the Motion is premature because they "cannot fully respond . . . without first deposing Walmarts [sic] corporate designees and employees" and "require additional time to obtain expert reports addressing these issues." *See* Opp. at 6. They did not, however, file an affidavit as required by Rule 56(f). *See Radich*, 886 F.2d at 1394 (holding that counsel's unverified memorandum opposing the motion for summary judgment did not comply with the affidavit requirement in Rule 56(d)); *Dowling v. Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988) (finding that where the plaintiff "did not file a Rule 56[d] affidavit with her response to the [defendant's] motion for summary judgment, . . . as a procedural matter alone, she has failed to comply with the rule").

Moreover, the suggestion by counsel for the McEntires that they have not had a reasonable opportunity to complete discovery is meritless. The Complaint was filed in state court on or about October 13, 2024, and removed to this Court on November 8, 2024. *See* ECF No. 1. Thus, at the time their opposition to the Motion for Summary Judgment was filed, the McEntires had had more than eight (8) months to obtain a liability expert.[3] *See Koplove v. Ford*

---

[2]    Rule 56(d) was previously found at subdivision (f). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." *See* Fed. R. Civ. R. 56, Notes to 2010 amendments.

[3]    The opposition was filed more than a month and a half ago. Thus, the times discussed herein are even longer.

*Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (finding that summary judgment, which was entered nine months after the case was initiated, was not premature where the plaintiff failed to "affirmatively demonstrate[], with specificity, diligent efforts on his or her part and unusual circumstances which have frustrated" efforts to obtain an expert's report).  On November 15, 2024, this Court issued an Order advising that "Discovery shall begin as soon as possible and shall not be delayed. . . ."  *See* ECF No. 9 at ¶ 5(b).  *See also Easley v. Reuberg*, No. 1:19-cv-00223, 2021 U.S. Dist. LEXIS 142280, at *1 (W.D. Pa. July 30, 2021) ("Litigants ignore the Court orders at their own peril.").  This Court's Policies and Procedures further advise that "[r]equests for extensions of discovery deadlines are strongly discouraged and rarely granted." *See* Policies and Procedures Section II(C).  Nevertheless, this Court granted two separate extensions amounting to more than ninety (90) days of additional time.  Accordingly, the McEntires had twice the amount of time that is normally provided to complete discovery.  *See* Policies and Procedures Section II(B)(2) ("In standard track cases, the Court may allow up to 90 days from the date of the initial pretrial conference to complete discovery.").

The McEntires have absolutely no excuse, nor do they proffer one, for not deposing Walmart's representatives following the filing of the Answer on December 3, 2024.[4]  The parties' extension requests were not due to the McEntires' inability to engage in the discovery process or to any unwillingness on the part of Walmart to cooperate in discovery.  *See* ECF Nos. 15, 18.  Rather, the McEntires simply failed to diligently pursue discovery, which is not a basis for relief under Rule 56(d).  *See N'Jie v. Mei Cheung*, 504 F. App'x 108, 111 (3d Cir. 2012)

---

[4]    Walmart, opposing any request to reopen discovery, states: "Plaintiffs have not issued a single Notice of Deposition regarding Walmart's corporate designee or a Walmart employee to discuss its policies and procedures regarding the product displays; or even discussed dates for these crucial depositions."  Memo 12, ECF No. 23-2.

(affirming the district court's decision to deny the plaintiffs' Rule 56(d) motion where the plaintiffs could "attribute any missing discovery only to their own neglect" and had "not demonstrated explicitly or implicitly that more diligent discovery was impossible" (internal quotations omitted)); *Anderson v. Step by Step, Inc.*, No. 21-4260, 2022 U.S. Dist. LEXIS 65366, at *5-6 (E.D. Pa. Apr. 8, 2022) (denying the plaintiff's motion to reopen discovery in response to the motion for summary judgment because the fault for plaintiff's inability to properly oppose the motion "lies with no one other than Plaintiff's attorney . . . and his own procrastination"), *affirmed* 2023 U.S. App. LEXIS 10138 (3d Cir. Pa., Apr. 26, 2023).

Although several subpoenas to Mr. McEntire's medical providers remained outstanding as of April 3, 2025, which is why a second extension was granted, this discovery issue has no bearing on the ability of the McEntires to depose Walmart's corporate designee and employees, or on Walmart's liability, which is the subject of the Motion for Summary Judgment. *See Dowling*, 855 F.2d at 139-40 (holding that a Rule 56(d) affidavit should "specify[], for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained"). At no point since the expiration of the discovery deadline on June 10, 2025, until their Court-ordered response in opposition to the Motion for Summary Judgment did the McEntires inform the Court that additional time was needed. Their attempt to avoid summary judgment as allegedly premature is baseless. Any delay to this straight-forward negligence action would prejudice Walmart and not be in the interests of justice.

The McEntires' requests to reopen and extend the time for discovery, and to deem the Motion for Summary Judgment premature are denied.

### C.    Federal Rule of Civil Procedure 56(e)(2)

Rule 56(e)(2) of the Federal Rules of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  This Court's Policies and Procedures also warns: "[a]ll facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted."  *See* https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/leepol.pdf at Policies and Procedures Section II(F)(9).  The Order dated June 30, 2025, directing the McEntires to respond to the Motion for Summary Judgment, again warned "that failure to timely respond will result in the facts being deemed admitted."  *See* ECF No. 27.

Despite these warning, the McEntires' opposition to Walmart's  Motion for Summary Judgment, makes no mention of Walmart's Concise Statement of Material Facts[5] or makes any attempt to dispute any facts.  *See generally* Opp.  Thus, consistent with Rule 56(e)(2) of the Federal Rules of Civil Procedure, Walmart's Concise Statement of Material Facts are deemed undisputed.  *See* Fed. R. Civ. P. 56(e)(2); *Robinson v. N.J. Mercer County Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in concluding that the defendants' material facts were undisputed where the plaintiff failed to oppose the defendants' statement of material facts); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of facts as undisputed for purposes of deciding the motion for

---

[5]    In Walmart's Concise Statement of Material Facts in Support of the Motion for Summary Judgment on Behalf of Defendants, *see* Stmt Facts, ECF No. 23, each fact is properly supported by photographic evidence or citation to the record, including Mr. McEntire's deposition that is attached as an exhibit, *see id.* at Ex. C.

summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statement of facts).

Although Walmart's Concise Statement of Material Facts are deemed undisputed,[6] because Walmart's facts are incomplete,[7] this Court considers Mr. McEntire's deposition testimony.

### D.    Undisputed[8] Material Facts

On February 6, 2024, at approximately 8:30 that morning, Mr. McEntire drove to Walmart to purchase a Bissell vacuum cleaner. *See* McEntire Dep. 32:23; 33:23-34:1, ECF No. 23. He testified that upon parking in a handicap-accessible space located approximately twenty to thirty feet from the store's entrance, he retrieved a shopping cart and proceeded inside to browse the aisles. *See id*. at 33:22; 34:1; 48:12-14.

Whilst examining one particular vacuum cleaner, Mr. McEntire—uncertain of the item's cost—lifted the box and asked a store employee for pricing assistance. *See id*. at 34:4-5. He was instructed to carry the box to another associate capable of scanning the product's barcode. *See id*. at 34:6-9. Mr. McEntire complied, had the vacuum scanned, and, upon learning the price, carried the box back to its original shelf location. *See id*. at 34:9-10.

---

[6]    Even if Walmart's facts were not deemed undisputed, Mr. McEntire's deposition testimony fails to create a genuine issue of fact for trial.  This evidence is discussed herein.

[7]    Walmart's Concise Statement of Material Facts consist essentially of the following:  On February 6, 2024, at approximately 8:54 A.M., Mr. McEntire is seen on CCTV footage looking at a display of vacuum cleaners.  *See* Stmt ¶ 2 and Ex. B (containing photographic stills from the CCTV footage), ECF No. 23.  Mr. McEntire dragged a vacuum cleaner box, which was lying on top of vertically stacked vacuum cleaner boxes, causing one of the bottom boxes to "tip over" and ultimately causing "the incident to occur."  *See id*. ¶ 3.  After the incident, a Walmart employee returned the vacuum cleaner box to a vertically stacked position- "the exact same spot and position onto the product display."  *See id*. ¶ 4.  Walmart does not, however, describe how the box tipped over or "the incident."

[8]    Because this Court discusses Mr. McEntire's deposition testimony to complete the factual background, any disputed facts are specifically identified.

Shortly thereafter, at approximately 8:54 A.M., as Mr. McEntire turned left out of the aisle, he encountered a display of Bissell vacuums arranged on a flat pallet, or skid, marked with signage advertising a price of $69.00. *See id.* at 34:10-12; 40:24; *see also* Stmt, Ex. B at Photo 1,[9] ECF No. 23.  The skid/display, the base of which was several inches from the ground, held one layer of vertically stacked (upright) vacuum cleaner boxes, in three side-by-side rows.  *See id.* and Photo 4.  When Mr. McEntire approached the display, the boxes in the left and center rows were stacked three-deep, while the right row contained two-deep stacked boxes.  *See id.* at Photo 1.  Three additional vacuum cleaner boxes were lying horizontally across the top of the vertically stacked boxes. *See id.* at Photo 1.  Mr. McEntire took[10] one of the top boxes-positioned on the upper horizontal layer- from the display.  *See* Stmt ¶ 3; McEntire Dep. at 39:14 – 40:9.  One of the bottom boxes fell.[11]  *See* Stmt ¶ 3; McEntire Dep. at 42:7-11.  Tripping over the box, Mr. McEntire's legs "locked up," causing him to pitch forward and fall to the ground knees-first.  *Id.* at 41:3-8, 43:9-20.  He dropped the vacuum cleaner box he was holding and used his arms to brace his fall.  *See id.* at 44:4-6. He experienced immediate, sharp pain in both knees and in his lower back, which he later described as "aching," "shooting," and "throbbing."  *See id.* at 44:12-18, 45:5-8.  He did not sustain any noticeable injury to his hands. *See id.* at 45:2-4.

---

[9]     Exhibit B of Defendant's Motion for Summary Judgment contains four photographs. This Opinion numbers them in order of appearance.

[10]     Walmart's undisputed facts state Mr. McEntire dragged the top box, but Mr. McEntire testified that he "lifted" the box up a few inches.  *Cf.* Stmt ¶ 3, *with* McEntire Dep. at 40:9-20.

[11]     Walmart's undisputed facts assert that the bottom box fell due to Mr. McEntire dragging the top box.  *See* Stmt ¶ 3.  Mr. McEntire, on the other hand, suggests that the top "box kept the lower box in place."  *See id.* at 42:8-9.  He testified that the bottom box fell because "it was half off the cart already."  *See* McEntire Dep. 42:9-11.  However, he never saw any such misalignment before he moved the top box and fell.  *See id.*  After he fell, he saw that some of the bottom boxes, which were vertically stacked, were "hanging off the skid itself."  *See id.* at 39:11-16; 42:12-21.  He surmised that the bottom boxes must have been half off the skid before he took the top box.  *See id.* at 42:12 – 43:4.

It took Mr. McEntire approximately thirty seconds to regain his bearings. *See id.* at 45:23. Upon pulling himself to a standing position using a nearby vacuum cleaner box, he became interested in another pallet—this one displaying $59.00 vacuums. *See id.* at 46:9-13; 70:7-12; 71:7-8. In pursuit of this cheaper model, Mr. McEntire placed the fallen $69.00 vacuum cleaner box back on its skid and picked up the $59.00 box—doing so without employee assistance.[12] *See id.* at 46:14-18. With the cheaper model in hand, Mr. McEntire used the self-checkout located about "half a block" from his current location. *Id.* at 47:12-15. He did not speak to an employee to report the fall, nor ask for an ambulance. *See id.* at 50:13-25.  Instead, after paying for the vacuum, he walked the distance back to his handicap-accessible parking spot and drove home. *See id.* at 48:12-18.

After Mr. McEntire arrived home and relayed the event to his wife, she allegedly "looked at [his] knees and [noted that] they were swollen, [as if] they had fluid in them. And she told [him to] … go back and report it." *Id.* at 49:16-19.  Mr. McEntire drove back to Walmart to report the incident. *See id.* at 35:5-12. Upon arriving at the store for the second time at approximately 9:30 A.M., parking in a handicap-accessible spot, and using a shopping cart to aid his walking, he approached customer service to ask them where a manager was. *See id.* at 51:14-52:5. After one emerged from a nearby office, Mr. McEntire filed a statement. *See id.* at 53:17-19. He then drove back home and "laid down for the rest of the day." *Id.* at 55:12-13. Mr. McEntire took Ibuprofen, but did not seek medical attention until the next day. *See id.* at 49:25 – 50:25, 56:5-7.

---

[12]     He attributes the relative ease of this maneuver to the weight of the vacuums, which were no more than "12 to 15 pounds" each. *See* McEntire Dep. 46:24-47:1.

III.     **LEGAL STANDARDS**

A.     **Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the moving is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure or proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

B.    **Premises Liability - Review of Applicable Law**

"Under Pennsylvania law, visitors to a store are 'business invitees,' and '[t]he duty owed to a business invitee is the highest duty owed to any entrant upon land.'" *See Pace v. Wal-Mart Stores E., LP*, 337 F. Supp. 3d 513, 518 (E.D. Pa. 2018) (quoting *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. Ct. 2006)). Pursuant to that duty,

> [a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> a)    knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> b)    should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> c)    fails to exercise reasonable care to protect them against the danger.

*See id.* at 519 (quoting *Henderson v. J.C. Penney, Corp.*, No. CIV A 08-177, 2009 Dist. LEXIS 13854, 2009 WL 426180, at *3 (E.D. Pa. Feb. 20, 2009)). "However, the 'mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence.'" *See id*. (quoting *Cox v. Wal-Mart Stores E., LP.*, 350 F. App'x 741, 743 (3d Cir. 2009)). Rather, a plaintiff must allege

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;
> (2) a failure to conform to the standard required;
> (3) a causal connection between the conduct and the resulting injury; and
> (4) actual loss or damage resulting in harm to the interest of another.

*See id*. at *4-5 (quoting *Felix v. GMS, Zallie Holdings, Inc.*, 501 F. App'x 131, 134 (3d Cir. 2012)).

C.    **Loss of Consortium**

"A claim for loss of consortium is intended to compensate an aggrieved spouse for the damaged marital expectations that result from injuries to his or her marital partner." *Saranchuk v. Lello*, No. CV 3:15-0893, 2017 U.S. Dist. LEXIS 169515, at *46-47 (M.D. Pa. Oct. 13, 2017)

(citing *Hopkins v. Blanco*, 320 A.2d 139 (Pa. 1974)), *on reconsideration*, 2018 U.S. Dist. LEXIS

143103 (M.D. Pa. Aug. 23, 2018), *aff'd in part, vacated in part, rev'd in part*, 779 F. App'x 888

(3d Cir. 2019). Loss of consortium is a derivative claim that depends upon a viable tort claim of

the spouse. *See Kline v. Zimmer Holdings, Inc.*, 662 F. App'x 121, 123 n.1 (3d Cir. 2016).

## IV.    ANALYSIS

Under Pennsylvania law, where a plaintiff has "failed to produce any evidence beyond

the mere fact that [a] box fell and struck her … while [on a store's premises]," she has failed to

"adequately prove the causation and breach of duty elements of negligence." *Vargas v. Bed, Bath

& Beyond, Inc.*, 2008 Phila. Ct. Com. Pl. LEXIS 132, at *8-9 (Jun. 16, 2008), *affirmed* 2009 Pa.

Super. LEXIS 3251 (May 7, 2009). In other words, evidence of injury, coupled with post hoc

conjecture about the "arrangement, management, and supervision" of stacked merchandise, falls

short of establishing a triable causation issue. *See id*. at *7. *Vargas* exemplifies this principle.

There, the plaintiff brought a negligence claim against a retail store, claiming that "when she

pulled the box she wanted to purchase off the shelf, another box underneath fell and struck her

foot." *Id*. at *7. In her own deposition, however, the plaintiff acknowledged that the "boxes

'weren't leaning off the shelf obviously out of disarray'" and that she "'didn't notice anything [to

that effect].'" *Id* .at *8. Without any evidence as to why the box fell, summary judgment was

granted in favor of the defendant. *Id*. at *8-9. This outcome accords with longstanding

Pennsylvania precedent. *See, e.g.*, *Cohen v. Penn Fruit Company*, 159 A.2d 558 (Pa. Super.

1960) (affirming summary judgment where a plaintiff injured by a falling can of pineapple juice

"did not meet the burden of proving that the can fell because of defendant's negligence either in

arranging the cans in a dangerous position or in failing to use due care to determine that the

displays had become dangerous by the handling of the same"); *Stewart v. Morrow*, 170 A.2d 338

(Pa. Super. 1961) (rejecting a negligence claim where the plaintiff alleged an unfastened mirror fell on him but offered no evidence that the position of the mirror was unsafe, likely to fall).

Just as the *Vargas* plaintiff did "not know with certainty what caused the box to fall,"[13] Mr. McEntire could only guess that the bottom box fell because "it was half off the cart already." *See* McEntire Dep. at 42:911.  He conceded that he did not perceive any such protrusion when he first approached the display.  *See id.* at 39:15-20.  He observed the alleged misalignment only after he moved the top box and the bottom box fell.  *See id.* at 39:23.  Although Mr. McEntire retrospectively alleges that the horizontal box on top of the display "kept the lower box in place," thereby suggesting an unsound configuration, he offers not a scintilla of evidence—testimonial, photographic, or otherwise—indicating that the stack was fundamentally unstable before his interaction with it.  *See id.* at 42:7-9.  Mirroring the *Vargas* plaintiff, Mr. McEntire rests his allegations on little more than mere speculation, which is insufficient to show that Walmart was negligent or that such negligence caused his injury.[14]  *See Cohen*, 159 A.2d at 561 ("Because there are so many uncertainties in the plaintiff's case and because several possibilities of the cause of the accident were indicated but none clearly shown, a verdict in the plaintiff's favor would not be tenable since it is the burden of the plaintiff to individuate that cause for which the defendant is liable.").  Moreover, the photo of the Walmart employee returning the top box to a vertical position, after Mr. McEntire's fall, shows that the right row of vertically stacked boxes was standing without any box on top to hold them in place.  *See* Stmt at Photo 4.

Consequently, summary judgment is warranted on the negligence count because the McEntires failed to produce evidence that Walmart negligently stacked the vacuum cleaner

---

[13]    *Vargas*, 2008 Phila. Ct. Com. Pl. LEXIS 132, at *3
[14]    According to Walmart's undisputed facts, the bottom box fell because Mr. McEntire dragged the top box off the display, which disproves causation.

boxes or that the way the boxes were arranged caused his fall.  Summary judgment must also be granted on the loss of consortium claim. *See Kline*, 662 F. App'x at 123 n.1 (holding that because the court affirmed the district court's grant of summary judgment to the defendant on tort claims, separate analysis of loss of consortium claim was not required); *Pusey v. Becton Dickinson & Co.*, 794 F. Supp. 2d  551, 565-66 (E.D. Pa. 2011) (dismissing the spouse's loss of consortium claim after granting summary judgment on the plaintiff's claims).

## V.    CONCLUSION

Because the McEntires have failed to present evidence sufficient to establish that the vacuum cleaner display was arranged in a negligently hazardous manner or that the way the vacuum cleaner boxes were stacked caused Mr. McEntire's fall, their premises liability claim cannot survive summary judgment.  Summary judgment on Mary McEntire's derivative loss of consortium claim is therefore also required. Summary judgment in favor of Walmart is granted.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge